**In re ECCS, INC.**

**No. 95–1400.**

United States Court of Appeals,
Federal Circuit.

Sept. 6, 1996.

Mark B. Harrison, Spencer, Frank & Schneider, Washington, DC, argued for appellant.

Kevin T. Kramer, Associate Solicitor, U.S. Patent and Trademark Office, Arlington, Virginia, argued for the Commissioner. With him on the brief were Nancy J. Linck, Solici-

tor, Albin F. Drost, Deputy Solicitor, and Nancy C. Slutter, Associate Solicitor.

Before RICH, NEWMAN, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

This is an ex parte appeal from a decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (Board) affirming the Examining Attorney's refusal to register a trademark.

This might be called the case of the missing space for, as will hereinafter appear, in reality that is all that is involved.

It is also a sort of comedy of errors in which both the applicant and the PTO fail to deal with the actual situation and learnedly discuss issues that are not actually involved.

Furthermore, the discussions in the parties' briefs seem to ignore the most fundamental aspect of United States trademark law, namely, that trademark ownership and attendant rights are acquired in the marketplace by use and that the statute, popularly known as the Lanham Act, aside from modern "intent to use" law not here involved, provides only for registration of existing marks.

ECCS' trademark as acquired by use in commerce is:

EXA

MODULE

for "COMPUTER STORAGE PRODUCTS, NAMELY TAPE BACKUP UNITS." The applicant, ECCS, Inc., filed an application to register that mark, Ser. No. 74/355,094, on February 3, 1993, comprising the usual Statement, Power of Attorney, Declaration, drawing, and specimens. *See* 15 U.S.C. § 1051; 37 C.F.R. §§ 2.21, 2.33 (hereinafter, 37 C.F.R. sections will be referred to simply as "Rules").

With respect to the specimen, the Statement said:

The mark is used by applying it to labels for the goods, and three specimens showing the mark as actually used are submitted herewith.

The specimens show the mark as reproduced above, EXA positioned above MODULE.

With respect to the "drawing" required by Lanham Act § 1(a)(1)(B) and Rule 2.21(3), the details of which are prescribed in Rules 2.51 and 2.52, the applicant filed as part of the original application a paper on which was typed

EXAMODULE

in apparent compliance with and exercising the right given by, Rule 2.51(e) which reads:

(e) If the application is for the registration of only a word, letter or numeral, or any combination thereof, not depicted in special form, *the drawing may be the mark typed in capital letters on paper*, otherwise complying with the requirements of § 2.52. [Emphasis ours.]

However, this "drawing" of typed capital letters on paper was *not* in compliance with other provisions of Rule 2.51, such as section (a)(1) reading:

(a)(1) In an application under section 1(a) of the Act [15 U.S.C. § 1051(a), Lanham Act § 1(a) ], the drawing of the trademark shall be a *substantially exact* representation of the *mark as used* on or in connection with the goods. [Emphasis ours.]

Therefore, the "drawing" was defective insofar as it differed from the specimens. It was not an "exact representation of the mark." The mark *as used on the goods* is shown, in this case, by the specimens on file, and the disparity is self-evident. In the typewritten "drawing," the two-line arrangement was changed to a single line, and the two parts of the mark were run together *without a space*.

In the first Office Action of May 24, 1993, the Examining Attorney reported her "determinations" by stating, first:

The drawing displays the mark as EXAMODULE. However, this differs from the display of the mark on the specimens, where it appears as EXA MODULE.

[Apparently she was not concerned with the difference between one-line and one-over-the-other format.] *The applicant cannot amend the drawing to conform to the display on the specimens because the character of the mark* would be materially altered. 37 C.F.R. Section 2.72(a). [Emphasis ours.]

The cited rule reads:

(a) Amendments may not be made to the description or drawing of *the mark* if the character of the mark is materially altered. The determination of whether a proposed amendment materially alters the character of *the mark* will be made by comparing the proposed amendment with the *description or drawing* of *the mark as originally filed.* [Emphasis ours.]

The second sentence of Rule 2.72(a) obviously assumes that one knows what "the mark as originally filed" was, which is clearly not this case where the specimens and the drawing are in conflict, thus creating an ambiguity with respect to the mark. The basic question here is: What *is* the mark applicant originally sought to register? A related basic question is: What mark has been acquired by use? The Examining Attorney ignored the first provision of the next paragraph of Rule 2.72, which paragraph reads in full:

(b) In applications under section 1(a) of the Act, amendments to the description *or drawing* of the mark may be permitted only *if warranted* by the specimens (or facsimiles) *as originally filed,* or supported by additional specimens (or facsimiles) and a supplemental affidavit or declaration in accordance with § 2.20 alleging that the mark shown in the amended drawing was in use prior to the filing date of the application. [Emphasis ours.]

Ignoring the first provision permitting amendment of a drawing to conform it to specimens, the Examining Attorney's next statement in her first action was the unimaginative, if not absurd, requirement that,

Therefore, the applicant must substitute specimens which show use of the mark *as it appears on the drawing.* 37 C.F.R. Section 2.51. [Emphasis ours.]

No citation to any particular part of Rule 2.51 was made and we find nothing in that rule to support her requirement for new specimens. The most pertinent provision of the rule would seem to be (a)(1), which we have quoted above, requiring that the drawing shall *exactly* represent the mark *as used,* and that use is to be found in the applicant's marketplace specimens rather than in its attorney's application papers supposedly based thereon. Even attorneys err. So do Trademark Examining Attorneys. In the same first Office Action the Examining Attorney wrote: "'EXA MODULE' has a different appearance than 'EXA MODULE' [sic] and could be pronounced differently. Therefore, 'EXAMODULE' is materially different from 'EXA MODULE.' Accordingly, appellant must submit substitute specimens." Therein we see how the case was made to turn on the significance of the lack of a single stroke of the space bar.

Notwithstanding the Examining Attorney's determinations, applicant responded with a new "drawing," namely, "EXA MODULE" typed on a paper, and the PTO refused to accept it, insisting that "[a]pplicant initially sought registration for 'EXAMODULE.'" This raises a fundamental question—is that true? When an initial application contains specimens showing the *actual* use of a mark in commerce, thus giving rise to ownership, and a *drawing which does not correspond* to the mark which the applicant owns, what is the mark sought to be registered and how do we find the answer to that question?

To conclude on the prosecution phase of this application to register, after the applicant traversed the refusal to accept a new typed drawing corresponding to the mark on the specimen, the Examining Attorney made FINAL her demand for different specimens corresponding to the drawing and her refusal to accept the amended drawing, contending that the application was originally filed to register EXAMODULE and that EXA MODULE is a material alteration thereof, citing *Visa International Service Association v. Life–Code Systems, Inc.,* 220 USPQ 740 (TTAB 1983), and continuing to insist that here allegedly two versions of the mark sought to be registered "create totally different commercial impressions" and that the

"modified mark does not contain the essence of the original mark," therefore, she said, the drawing amendment constitutes a "material alteration."

Applicant appealed to the Board which agreed with the Examining Attorney's reasoning and, therefore, affirmed the refusal to register in a brief opinion which, interestingly, begins by reproducing one of the *specimens* on file which it characterizes as "showing the mark as actually used." The opinion also cites Rule 2.51(a)(1), reciting its provision requiring that, "as is the case here, the drawing of the mark must be a substantially exact representation of the mark as used on the goods." The Board's opinion, after displaying the *specimen*, says:

> We find that the *original* drawing of the mark EXAMODULE is not a substantially exact representation of the mark EXA MODULE as shown on the specimen with EXA and MODULE appearing on different lines, one above the other. Applicant did not even argue this point, but rather submitted an amended drawing *in an attempt to conform it with the mark on the specimens.*
>
> Thus, we focus our attention on the issue of material alteration. [Our emphasis.]

And, indeed, that remained the Board's focus to the end, concentrated on questions of whether applicant was "changing the mark," making "a material alteration of the mark," without once adverting to its initial observation that the *specimen* showed "the mark as used on the goods" and that the original drawing did not. To support its "material alteration" thesis—the basis for which we cannot fathom—the Board cited and relied on several of its own opinions as follows:

*In re Abolio y Rubio, S.A.C.I. y G.*, 24 USPQ2d 1153 (TTAB 1992)

*In re Meditech Int'l Corp.*, 25 USPQ2d 1159 (TTAB 1990)

*In re Vienna Sausage Mfg. Co.*, 16 USPQ2d 2044 (TTAB 1990)

*In re Wine Soc'y of Am. Inc.*, 12 USPQ2d 1139 (TTAB 1989)

*In re Nationwide Indus. Inc.*, 6 USPQ2d 1882 (TTAB 1988)

*In re Pierce Foods Corp.*, 230 USPQ 307 (TTAB 1986)

*Visa Int'l Serv. Ass'n v. Life–Code Sys., Inc.*, 220 USPQ 740 (TTAB 1983)

We have carefully examined all of these cases and find that none has any bearing on the situation before us in which an original application is *internally inconsistent* as to what the mark is, the specimen displaying one mark and the drawing a slightly different mark, which inconsistency the applicant tried to correct by a drawing amendment to eliminate the inconsistency, thus making clear what *is* the mark sought to be registered. It seems only a matter of common sense and sound trademark law that the specimens show what mark *is* owned by the applicant, ownership being a prerequisite to registration, and that one should look to the specimens, in a case of inconsistency, to determine what an applicant wishes to register, not to a clearly inconsistent and erroneous drawing made by its attorney. Therefore, we consider that the Examining Attorney's initial peremptory statement that "applicant cannot amend the drawing to conform to the display on the specimens" and her demand for non-existent specimens conforming to the erroneous drawing were unjustified in law.

Unlike the situations exemplified by the cases cited and listed above, involving attempts to *amend marks* after *unambiguous* applications to register have been filed which raise the question whether the marks have been changed materially, this case does not involve an attempt to change or amend a mark at all. The question of materiality is therefore not involved and the discussion of that issue by the Board is beside the point. Applicant merely seeks to remove the ambiguity in the application as initially filed by *correcting the drawing*. The mark owned by the applicant and sought to be registered as shown by actual specimens, remains the same and there has been *no* attempt to change it.

It is clear from a consideration of the facts of this case and the facts of the cases relied on by the Board that there are two categories of amendments to drawings in trademark registration applications.

In the first category, which is the present case, are amendments to *conform* the drawing to the mark sought to be registered as shown by the specimens "showing the mark as actually used" and therefore owned by the applicant so that he *can* register it. Excepting the intent-to-use applications, marks *not used* are not registrable and therefore the regulations, ever since the effective date of the Lanham Act, have recognized the amendment of application drawings "if warranted by the specimens (or facsimiles) as originally filed," in the words of the pre–1989 § 2.72. Consider also the very first Patent Office Rule under the Lanham Act on drawing amendments:

13.2 *Amendments to description or drawing.* Amendments to the description or drawing of the mark may be permitted only if warranted by the specimens (or facsimiles) as originally filed, but may not be made if the nature of the mark is changed thereby.

Except for changing the word "nature" to "character," and the substitution for the word "changed" by "materially altered" we have exactly the same provisions today, plus others, in Rule 2.72(a) and (b).

In the second category of amendments to drawings are those which attempt to *change the mark* described in the application as originally filed where there has been no ambiguity as to what it is or inconsistency between the specimens and drawing as originally filed. The PTO has ignored the distinction between these different categories. Here, ECCS has been trying from the beginning to register one and the same mark. No change in the mark is involved and cases or rules prohibiting change have no relevancy. It simply wants to get its drawing into legal conformity to the mark it has adopted and used and the PTO has been telling ECCS it cannot do it despite a long-standing rule that permits conforming drawings to specimens.

The decision of the Board is *vacated* and the case is *remanded* with instructions to accept the proffered amendment to the drawing and for such further prosecution as is necessary. We note the Examining Attorney's first-action statement that her search turned up no bar to registration.

*VACATED and REMANDED.*

CLEVENGER, Circuit Judge, concurring.

The Board and the applicant thought that this case is governed by the provisions of 37 C.F.R. § 2.72(a), which states that

Amendments may not be made to the description or drawing of the mark if the character of the mark is materially altered. The determination of whether a proposed amendment materially alters the character of the mark will be made by comparing the proposed amendment with the description or drawing of the mark as originally filed.

Throughout the proceedings in the Patent and Trademark Office, the focus of attention was whether the character of the mark would be materially altered if the applicant were permitted to amend the original drawing of "EXAMODULE" to a drawing made up of two words, "EXA" and "MODULE." The examiner and the Board concluded that permitting the substitution of the two word drawing for the one word original drawing would produce a material alteration under section 2.72(a).

I read the court's opinion to say that the Board erred as a matter of law in deciding this case under 37 C.F.R. § 2.72(a). Instead, the examiner and the Board should have realized that this particular case is governed by 37 C.F.R. § 2.72(b), which permits "amendments to the description or drawing of the mark ... if warranted by the specimens ... as originally filed."

In this case, the applicant apparently made a mistake in composing his drawing. He wrote it as "EXAMODULE." He supplied "EXA MODULE" as his specimen. But, in his Statement, the applicant averred that the mark as actually used is shown by *both* the drawing and the specimen. (*Compare* "applicant has adopted and is using the mark shown in the accompanying drawing," *with* "three specimens showing the mark as actually used are submitted herewith.") In short, the applicant stated that both marks are in actual use. Therein lies an ambiguity about which of the two marks the applicant

sought to register. The court resolves that ambiguity in favor of the specimen actually submitted—a resolution which seems reasonable in the circumstances.

The examiner and the Board should have realized that this is not a case of whether the applicant sought to change the character of a mark for which registration is sought. Rather, the case asks which of the two disclosed marks the Statement says have been in use is the one sought to be registered. If the mark sought had been "EXAMODULE," then the specimen would have been in error. The applicant apparently could have fixed that with no objection from the examiner, under 37 C.F.R. § 2.59, which permits substitution of specimens "as used on or in connection with the goods." Here, however, the applicant wanted to register "EXA MODULE," which required a change in the original drawing to conform to the specimen as originally filed, and to select one of the two marks the Statement says were being used at the time of the application as the mark for which registration was sought. In this case,

changing the drawing of "EXAMODULE" to "EXA MODULE" is warranted by the original specimen, under section 2.72(b).

This case is problematic because the application referred to two marks as actually used in commerce. Since there is a simple and permissive way to fix the problem when the applicant wants to change specimens, I see no reason to reject section 2.72(b) as a power source to fix the problem when the applicant wants to change drawings. Our embrace of section 2.72(b), however, as the power source for compelling the amendment sought in this case, may come as a surprise to the litigants, who thus far have comprehended the case only within the confines of section 2.72(a).