**In re HACOT–COLOMBIER.**

No. 96–1240.

United States Court of Appeals, Federal Circuit.

Jan. 21, 1997.

Andrew J. Gray, IV, Jacobson, Price, Holman & Stern, PLLC, of Washington, DC, argued, for appellant. With him on the brief was Simor L. Moskowitz.

Albin F. Drost, Deputy Solicitor, U.S. Patent and Trademark Office, Arlington, VA, argued, for the Commissioner. With him on the brief were Nancy J. Linck, Solicitor, and Nancy C. Slutter, Associate Solicitor. Of counsel was Kevin T. Kramer, Associate Solicitor.

Before RADER, SCHALL, and BRYSON, Circuit Judges.

RADER, Circuit Judge.

The Trademark Trial and Appeals Board (Board) affirmed the examiner's refusal to register Hacot–Colombier's mark. Because Hacot–Colombier materially altered the character of its mark in violation of proper regulations, this court affirms.

I

On June 26, 1992, Hacot–Colombier filed an application under section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d) (1994), seeking United States registration of its mark based on the January 23, 1992, priority date of its French application. On June 28, 1993, the examiner issued a rejection because the drawing on Hacot–Colombier's application was not a "substantially exact representation of the mark as it appears in the foreign registration certificate." On December 28, 1993, over eighteen months after its original filing, Hacot–Colombier requested reconsideration and submitted an amended drawing. The examiner rejected Hacot–Colombier's request and made final the refusal to register. Upon appeal, the Board affirmed the examiner's rejection. The Board again noted differences between the applicant's French and American applications as shown by the following drawings:

Hacot-Colombier's
Original Application

Hacot-Colombier's
Amended Drawing

Hacot-Colombier's
French Registration

In addition, on March 8, 1994, Hacot–Colombier filed an application for registration of its house mark ("Hacot–Colombier H & C"). The design was published for opposition on April 16, 1996, and has subsequently been approved.

## II

This court relies on the Board's factual findings unless "clearly erroneous." *Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 1578–79, 222 USPQ 665, 667 (Fed.Cir.1984) ("[W]e cannot simply decide for ourselves whether we would make the same factual determinations as the Board did. On the contrary, we must accept the [Board's] factual findings unless they are clearly wrong."); *Weiss Assocs. Inc. v. HRL Assocs. Inc.,* 902 F.2d 1546, 1547–48, 14 USPQ2d 1840, 1841 (Fed.Cir.1990) ("This court must accept the [Board's] findings unless they are clearly erroneous."); *International Mobile Mach. Corp. v. International Tel. & Tel. Corp.,* 800 F.2d 1118, 1120, 231 USPQ 142, 143 (Fed.Cir.1986) ("This court reviews the Board's factual determinations under the clearly erroneous standard."). In this case, the central inquiry of whether a mark is a "substantially exact representation" of another mark is a factual finding. Moreover, this court defers to the agency's reasonable statutory interpretation. *See Eastman Kodak Co. v. Bell & Howell Document Management Prods., Co.,* 994 F.2d 1569, 1571–72, 26 USPQ2d 1912, 1915–16 (Fed.Cir.1993) (applying *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*

467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to a decision of the Board, which is treated as if it were the "agency," and holding the Board's interpretation of an ambiguous provision of the trademark statute reasonable, rather than undertaking a *de novo* interpretation of law).

## III

Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d), grants a priority in filing date based on a foreign filing, if a qualified applicant files a United States application within six months of filing the same mark in a treaty country. Under this law, the United States application receives an effective filing date that is the same as the foreign filing date. To qualify, however, an applicant must include a drawing of the mark with the trademark application. *See* 37 C.F.R. § 2.21(a)(3) (1996) (materials receive no filing date until submission of a drawing). In the case of a United States application seeking the benefit of a foreign priority date, 37 C.F.R. § 2.51(a)(3) (1996) states:

In an application under section 44 of the Act, the drawing of the trademark shall be a *substantially exact representation* of the mark as it appears in the drawing in the registration certificate of a mark duly registered in the country of origin of the applicant.

(Emphasis added.) *See also United Rum Merchants Ltd. v. Distillers Corp. (S.A.),* 9 USPQ2d 1481, 1483–84 (TTAB 1988) (the drawing in a United States application may

not differ in any material way from the mark as shown in the foreign application or registration). This regulation requires the United States application to include an almost exact replica of the foreign mark.

■ The regulation's term "substantially" permits some inconsequential variation from the "exact representation" standard. In *United Rum Merchants,* the Board discussed the few instances when a mark in the United States application may vary slightly from the foreign filing. *Id.* The Board noted that an applicant may delete nonmaterial informational matter, such as net weight or content information, from the foreign registration of an entire label. *Id.* at 1484. Beyond such limited exceptions to the "exact representation" standard, however, any difference between the mark in the drawing and the mark in the foreign registration requires the examiner to refuse registration.

·· In the instant case, the originally filed mark ("la maison nature" plus the tree design) differs substantially from the registered foreign mark ("la maison nature par Hacot–Colombier H & C" plus an altered tree design). Therefore, the examiner simply applied the regulatory standard in rejecting the initial application.

Much later Hacot–Colombier attempted to file an amended drawing. 37 C.F.R. § 2.72 (1996) governs amendments to drawings:

> § 2.72 Amendments to description or drawing of the mark.
>
> (a) Amendments may not be made to the description or drawing of the mark if the character of the mark is *materially altered.* The determination of whether a proposed amendment materially alters the character of the mark will be made by comparing the proposed amendment with the description or drawing of the mark as originally filed.
>
> ....
>
> (d) In applications under section 44 of the Act, amendments to the description or drawing of the mark may be permitted only if warranted by the description or drawing of the mark in the foreign registration certificate.

(Emphasis added.)

■ Hacot–Colombier argues that section 2.72(d) trumps section 2.72(a). According to Hacot–Colombier's argument, as long as the proposed amendments to the drawing bring the United States application into closer conformity with the foreign application, such changes are not material alterations in violation of section 2.72(a). The Board, however, has previously rejected this argument in *In re Abolio y Rubio S.A.C.I. y G.,* 24 USPQ2d 1152 (TTAB 1992). The agency's interpretation as explained by the Board in *Abolio* deserves deference. *See In re Dr. Pepper Co.,* 836 F.2d 508, 510, 5 USPQ2d 1207, 1209 (Fed.Cir.1987) (deference accorded reasonable agency interpretation). The Board reasoned:

> We decline to read Rule 2.72(d) so broadly as to allow any amendment to the drawing in the U.S. application so long as the amendment is supported by the mark in the foreign registration. Rather, this subsection must be read in conjunction with Rule 2.72(a) which, as noted above, prohibits an amendment to the drawing if the amendment would constitute a material alteration of the character of the mark. Otherwise, there would be no reason for subsection (a) to be included in Rule 2.72. That is, if the drawing in any Section 44 application could be amended as long as the amendment was warranted by the mark in the foreign registration, the additional limitation in subsection (a) would be superfluous. Rule 2.72(a) and (d) together evidence a requirement that the drawings of applications based on Section 44 may be amended only if the character of the mark is not materially altered, and if the amendment is warranted by the drawing or description of the mark in the foreign registration....

*Abolio,* 24 USPQ2d at 1154–55. This court agrees. Rule 2.72 includes both a prohibition against material alterations and a requirement that any alteration conform to the foreign registration. Therefore, section 2.72(d) is a separate and discrete limitation to the amendment of drawings. Specifically, an amendment, even an immaterial change, must bring the United States application closer to the foreign registration. In addition, an amendment that conforms with the

foreign application must not be a material alteration. Otherwise, under Hacot–Colombier's reading of the regulations, an applicant could secure a priority date by filing any (even outrageously dissimilar) mark, with later (potentially numerous) amendments under section 2.72(d). Thus, Hacot–Colombier's reading of the regulations could undercut or even negate the "same mark" requirement in section 44(d).

## IV

Under the statutory and regulatory standard, therefore, Hacot–Colombier cannot materially alter its drawing to conform with its foreign registration. Nonetheless, under section 2.72(a), Hacot–Colombier is free to amend its drawing, and keep its priority filing date, as long as it does not materially alter its initial filing. The examiner applies this material alteration test to proposed amendments. In *Visa International,* the Board elaborated on the application of this test:

> The modified mark must contain what is the essence of the original mark, and the new form must create the impression of being essentially the same mark. The general test of whether an alteration is material is whether the mark would have to be republished after the alteration in order to fairly present the mark for purposes of opposition. If one mark is sufficiently different from another mark as to require republication, it would be tantamount to a new mark appropriate for a new application.

*Visa Int'l Serv. Ass'n v. Life–Code Sys., Inc.,* 220 USPQ 740, 743–44 (TTAB 1983); *see also* Trademark Manual of Examining Procedure (TMEP), § 807.14(a) (2d ed. 1993) ("As a general rule, in the case of additions to marks, the addition of any element which would require a further search would represent a material alteration.").

Hacot–Colombier argues that its attempted alteration merely adds Hacot–Colombier's house mark, and therefore is not a material alteration. *See* TMEP § 807.14(a) ("Amendments to marks to add an element which the applicant has previously registered for the same goods or services as those in the application which is being examined have been permitted."). For example, in *In re Nationwide Industries, Inc.,* 6 USPQ2d 1882 (TTAB 1988), the applicant initially claimed the mark "RUST BUSTER." Because of an opposition, the applicant sought to amend its application to the mark "SNAP RUST BUSTER," a combination of its original application ("RUST BUSTER") and its registered house mark ("SNAP"). *Id.* at 1884. The Board permitted this alteration as immaterial:

> When an applicant owns a registration of matter sought to be added to a pending mark, and the registration covers the same goods or services as those listed in the pending application, the alteration resulting from the amendment of the pending mark to add the registered mark does not materially affect the applicant's right to registration, nor does it require a new search or republication, and the amendment is therefore allowable.

*Id.* at 1885; *see Florasynth Lab., Inc. v. Mülhens,* 122 USPQ 284 (Comm'r Pats.1959) (addition of applicant's previously registered mark "4711" to mark sought to be registered, "ELAN," not a material alteration).

■ In this case, however, Hacot–Colombier's proposed addition of its house mark remains a material alteration for two reasons. First, Hacot–Colombier filed its original application only in Class 2 (Natural Dyes for Textile Manufacture), while its house mark applies to goods in Classes 20 (Pillows), 22 (Down Feathers), and 24 (Sheets, Pillowcases, Quilt Covers, Mattress Covers). Therefore, the registrations do not cover the same goods or services. As such, a competitor in the natural dye industry would not be on notice that Hacot–Colombier might combine these marks in that class of goods. Second, at the time of the original application, Hacot–Colombier had not yet acquired a registration on its house mark. Thus, in this case Hacot–Colombier's proposed addition of its house mark would materially affect its right to registration and require a new search. Thus, the Board did not commit reversible error in rejecting this proposed amendment.

## V

Finally, Hacot–Colombier argues that this case is controlled by *In re ECCS, Inc.*, 94 F.3d 1578, 39 USPQ2d 2001 (Fed.Cir. 1996). In ECCS's original application for registration of a mark already in use in commerce, ECCS filed specimens of the actual use along with the required drawing. *Id.* at 1579. Unfortunately, the drawing differed from the submitted samples. *Id.* In vacating the Board's refusal to allow an amendment materially altering the drawing, the court noted that ECCS's application for registration was "internally inconsistent." *Id.* at 1581. The court then held that the examiner should have looked to the specimens, which established ECCS's actual rights in the mark, to resolve the ambiguity. *Id.*

In this case, however, the original 1992 application contained no ambiguity. In fact, it was not until April 22, 1993, ten months after the original filing, that Hacot–Colombier supplied the examiner a copy of the French registration. At that point, an ambiguity arose. However, this ambiguity arose well after the six-month window for foreign priority filing had slammed shut. Once again, to grant Hacot–Colombier the benefit of the priority date would allow a party seeking the benefit of a foreign priority date to file any drawing, then conform the drawing to the foreign filing at a later date. The statutory and regulatory rules are not so loose. The Board properly enforced these rules to prevent fraud or improper advantage.

## VI

This court detects no clear error in the Board's finding that the mark in the amended drawing does not create the impression of being the same mark as that depicted in the originally filed drawing.

*AFFIRMED.*