This Opinion is a
Precedent of the TTAB

Hearing: February 3, 2021                                        Mailed: May 14, 2021

## UNITED STATES PATENT AND TRADEMARK OFFICE

———

### Trademark Trial and Appeal Board

———

*In re MN Apparel LLC*

———

Serial No. 87876633

———

Bradley J. Walz, Clinic Supervisor, and Martha L. Snipstad of University of
St. Thomas School of Law IP Clinic, for MN Apparel LLC.[1]

Darryl M. Spruill, Trademark Examining Attorney, Law Office 112
Renee Servance, Managing Attorney.

———

Before Cataldo, Shaw and Lebow,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

Applicant, MN Apparel LLC, filed an application on the Principal Register seeking

registration of the mark MOSTLY MN ONE WITH EVERYTHING in standard

characters, identifying the following goods:

---

[1] Mr. Walz filed the briefs and Ms. Snipstad argued at the oral hearing.

Page references herein to the application record are to the downloadable .pdf version of the
USPTO's Trademark Status & Document Retrieval (TSDR) system. References to the briefs
and orders on appeal are to the Board's TTABVUE docket system. The number preceding
"TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE"
refer to the page number(s) of that particular docket entry.

> Baseball caps; Beanies; Hats; Hooded sweatshirts; Infant and toddler one piece clothing; Shirts; Tank tops; Short-sleeved or long-sleeved t-shirts; Sweat shirts; T-shirts in Class 25.[2]

The Trademark Examining Attorney finally refused registration under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, on the bases that the specimen of record does not show proper use of the mark in commerce, fails to display a "substantially exact representation of the mark,"[3] and constitutes mere advertising for goods.[4]

Applicant appealed. The appeal is fully briefed.

## I. Applicant's Specimen

Necessarily, we begin by reviewing Applicant's specimen.[5] Submitted with the involved application, Applicant's specimen consists of five Internet webpage excerpts, which Applicant describes as follows: "The slogan 'Mostly MN One With Everything' used on the Company website in conjunction with various clothing for sale by the company."[6]

---

[2] Application Serial No. 87876633 was filed on April 13, 2018 pursuant to Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), claiming a date of first use anywhere at least as early as November 15, 2017 and a date of first use in commerce at least as early as December 21, 2017.

[3] Examining Attorney's brief, 11 TTABVUE 2-3.

[4] 11 TTTABVUE 2.

[5] We presume that Applicant and the Examining Attorney are familiar with the prosecution history of the involved application and their arguments directed toward the issues on appeal, and repeat them in this decision only as necessary.

[6] Applicant characterizes these five pages as a single specimen and, in the interest of consistency, we will also do so.

The five pages comprising the specimen of use are reproduced below.[7]



The first page of Applicant's specimen is a screenshot from its website, displaying

the tagline "MN Apparel – Mostly MN and one with everything." It includes several

lines of text, but only the wording "mostly organic, made in the USA clothing by Royal

Apparel" refers to the identified goods. The screenshot displays an empty "cart" icon

---

[7] At oral hearing, Applicant admitted that page one of its specimen is the only acceptable example of use, and that pages two through five are contextual in nature. Nonetheless, we will consider all five pages of Applicant's specimen of use in our determination.

for goods purchased in U.S. dollars, and links to search the "NORMN COLLECTION" and "SOMN COLLECTION,"[8] and another link to "SHOP."



The second page of the specimen, a screenshot from Applicant's Instagram page, includes a description ending with the sentence "Mostly MN, one with everything" that also includes the wording "USA organic cotton," along with photographic images of, inter alia, clothing and a hat displaying the term "NORMN".

---

[8] Wording on the specimen explains that "NORMN" and "SOMN" respectively refer to Northern and Southern Minnesota.



The third page of the specimen, a screenshot from Applicant's Facebook page, features essentially the same wording as the first page, including the tagline "MN Apparel – Mostly MN and one with everything" and the clothing-related wording "mostly organic, made in the USA clothing by Royal Apparel."



The fourth page of the specimen, a screenshot from the "Shop" page of Applicant's

Facebook page, displays various items of clothing and headwear, along with pricing

information and the button "Shop Now." This page displays Applicant's trade name,

MN Apparel LLC, and MN logo design, but no permutation of the applied-for mark.



The fifth page of Applicant's specimen, a screenshot from the "About" section of Applicant's Facebook page, features the following description: "The legendary Paul BunZen NORMN & SOMN tattoo collections on high quality T-shirts, Sweatshirts, Beanies and Trucker Hats. MN Apparel – Mostly Minnesota, one with everything."

## II.   Analysis

The Trademark Act "provides for registration of a mark based on use of the mark in commerce." *In re Siny Corp.*, 920 F.3d 1331, 2019 USPQ2d 127099, at *2 (Fed. Cir. 2019) (citation omitted). Under Section 45 of the Trademark Act, 15 U.S.C. § 1127, a trademark is used in commerce when "it is placed in any manner on the goods or their containers or the displays associated therewith …." *See also* Trademark Rule 2.56(b)(1), 37 C.F.R. § 2.56(b)(1). To demonstrate such use, the USPTO "requires an applicant to submit a specimen of use 'showing the mark as used on or in connection with the goods.'" *Siny*, 2019 USPQ2d 11362, at *2 (quoting *In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1120 (Fed. Cir. 2009)).

We discuss below the Examining Attorney's bases for rejection of Applicant's specimen as not showing proper use of the mark in commerce. The Examining Attorney asserts that the specimen is not a substantially exact representation of the mark for two reasons, and we start with these.

### A.   House Mark or Trade Name on Applicant's Specimens

First, the Examining Attorney argues that "[a]pplicant has clearly combined two marks to create a new mark"[9] because Applicant's specimen displays a combination of its house mark or trade name MN APPAREL and different forms of the applied-for mark. In other words, the Examining Attorney argues that Applicant seeks to register only part of the mark that appears on its specimen, which therefore cannot

---

[9] 11 TTABVUE 7.

be considered a substantially exact representation of the mark on the drawing page of the application. We disagree.

It is well settled that an applicant may apply to register any element of a composite mark if that element, as shown in the record, presents a separate and distinct commercial impression that indicates the source of the applicant's goods or services and distinguishes the applicant's goods or services from those of others.[10] *See, e.g.*, *In re Chem. Dynamics Inc.*, 839 F.2d 1569, 5 USPQ2d 1828, 1830 (Fed. Cir. 1988); *Institut Nat'l des Appellations D'Origine v. Vintners Int'l. Co.*, 954 F.2d 1574, 22 USPQ2d 1190, 1197 (Fed. Cir. 1992) (determining "what exactly is the 'trademark'?" "all boils down to a judgment as to whether the designation for which registration is sought comprises a separate and distinct 'trademark' in and of itself.") (internal citations omitted). It is the overall commercial impression of the mark that is controlling. *In re 1175856 Ontario Ltd.*, 81 USPQ2d 1446, 1448 (TTAB 2006).

Applicant's above specimen, consisting of one page from its website and four social media pages, shows MN Apparel used as a house mark or trade name that, in varying ways, is separate and apart from the applied-for mark. On three of the four pages displaying the applied-for mark (in its various permutations), the applied-for mark is separated from "MN Apparel" by a hyphen. On the Instagram page, the applied-for mark is separated from "MN Apparel" by an entire sentence. We find that Applicant's

---

[10] With its August 8, 2019 Request for Reconsideration at TSDR 10-23, Applicant submitted copies of third-party marks and evidence displaying them in proximity to trade names in support of its argument that MN Apparel makes a separate impression from the applied-for mark in its proffered specimen. We note, but find it unnecessary to rely upon, this evidence.

presentation of its house mark and trade name, "MN Apparel," and the several permutations of the applied-for mark, separated by either a hyphen or a sentence on its specimen, create separate commercial impressions.

This case is analogous to *In re Royal Body Care Inc.*, 83 USPQ2d 1564, 1567 (TTAB 2007), where the applicant sought to register the mark NANOCEUTICAL when it was embedded in the phrase RBC'S NANOCEUTICAL on the specimen of use as displayed below.

The Board found that as displayed on the specimen, "the terms RBC's and NANOCEUTICAL are separate, not connected. They do create two separate impressions." 83 USPQ2d at 1566-67; *see also In re Lorillard Licensing Co.*, 99 USPQ2d 1312, 1316 (TTAB 2011). A mark creates a separate and distinct commercial impression if it is not "so entwined (physically or conceptually) with other material that it is not separable from it in the mind of the consumer." *In re Yale Sportswear Corp.*, 88 USPQ2d 1121, 1123 (TTAB 2008) (quoting *In re Chem. Dynamics Inc.*, 5 USPQ2d at 1830).

Likewise, in this case, Applicant submitted excerpts from its website and social media pages showing its house mark or trade name MN Apparel separated by a hyphen or sentence from different versions of the applied-for mark. Accordingly, Applicant's specimen need not also show the use of the applied-for mark MOSTLY MN ONE WITH EVERYTHING without the house mark, MN Apparel.

B. Mark in the Specimen Does Not Match the Mark in the Drawing

Second, focusing on the applied-for mark MOSTLY MN ONE WITH EVERYTHING, the Examining Attorney argues that none of the five pages of the specimen show "substantially exact representations of the mark."[11] In particular, the Examining Attorney argues that "Applicant's use of the applied for mark shows an inconsistent use of various forms of the mark."[12]

We agree with the Examining Attorney's statement of the legal standard. "In an application under section 1(a) of the Act, the drawing of the mark must be a substantially exact representation of the mark as used on or in connection with the goods and/or services." Trademark Rule 2.51(a), 37 C.F.R. § 2.51(a). If the drawing is not a substantially exact representation of the trademark, registration must be refused. *See generally* Trademark Manual of Examining Procedure ("TMEP") § 807.12(d) (Oct. 2018).

We disagree with the Examining Attorney's argument that the standard is not satisfied here. The applied-for mark is displayed in the drawing as MOSTLY MN ONE WITH EVERYTHING. Applicant's specimen displays the following phrases:

Page One – MOSTLY MN AND ONE WITH EVERYTHING;

Page Two – MOSTLY MN, ONE WITH EVERYTHING;

Page Three – MOSTLY MN AND ONE WITH EVERYTHING;

Page Four – no display of the mark;

---

[11] 11 TTABVUE 6.

[12] 11 TTABVUE 5.

Page Five – MOSTLY MINNESOTA, ONE WITH EVERYTHING. As can be seen, none of the four pages of Applicant's submitted specimen that display some permutation of the mark show the mark exactly as it appears in the drawing page of the application. Pages one and three include the word "AND" after "MN." Page two includes a comma after "MN." Page five substitutes "MINNESOTA," for "MN." Applicant's specimen thus displays three different variations of the applied-for mark, none of which exactly match the drawing.

The standard, however, is not "exactly match" but "substantially exact representation." Under the Board's precedents, a drawing displaying only a "minor alteration" of the mark that "does not create a new and different mark creating a different commercial impression" from the matter shown in the specimen is acceptable under the "substantially exact representation" standard. *In re Schechter Bros. Modular Corp.*, 182 USPQ 694, 695 (TTAB 1974); *see also In re Frankish Enters. Ltd.*, 113 USPQ2d 1964, 1974 (TTAB 2015) (quoting *Schechter*). We therefore assess each displayed use to determine acceptability.

We find the display of Applicant's mark as MOSTLY MN, ONE WITH EVERYTHING on its Instagram site (specimen page two) is a substantially exact representation of the MOSTLY MN ONE WITH EVERYTHING mark in its drawing. The mere addition of a comma to the mark in the specimen is not sufficient to create a different commercial impression from the mark on the drawing page. *See In re R.J. Reynolds Tobacco.*, 222 USPQ 552 (TTAB 1984) (BE-MORE-YOU in stylized form substantially exact representation of BE MORE YOU). *See also* TMEP 807.12(a)(iii).

This is not a case where the punctuation changes the mark's meaning or commercial impression. *Cf., e.g.*, *In re Guitar Straps Online LLC*, 103 USPQ2d 1745 (TTAB 2012) (GOT STRAPS? not a substantially exact representation of GOT STRAPS); *In re Yale Sportswear Corp.*, 88 USPQ2d 1121, 1123-24 (TTAB 2008) (UPPER 90° with the degree symbol not a substantially exact representation of UPPER 90).

We also find the display of Applicant's mark as MOSTLY MN AND ONE WITH EVERYTHING on Applicant's website and Facebook site (specimen pages one and three) is a substantially exact representation of the MOSTLY MN ONE WITH EVERYTHING mark in its drawing. We are mindful that 37 C.F.R. § 2.51(a) requires that "the drawing of the mark must be a substantially *exact* representation of the mark as used on or in connection with the goods and/or services."[13] Nonetheless, the "regulation's term 'substantially' permits some inconsequential variation from the 'exact representation' standard." *In re Hacot-Columbier*, 105 F.3d 616, 41 USPQ2d 1523, 1525 (Fed. Cir. 1997).[14] In the context of the particular mark at issue here, we find that the addition of the conjunction "AND" represents just such an

---

[13] Emphasis added.

[14] We recognize that "the determination of whether a mark shown in the drawing is a substantially exact representation of the mark shown on the specimen is 'assuredly a subjective one.'" *In re wTe Corp.*, 87 USPQ2d 1536, 1539 (TTAB 2008) (quoting *R.J. Reynolds Tobacco*, 222 USPQ at 552). Indeed, "each case presents its own unique circumstances and requires a judgment as to that particular designation." *1175856 Ontario Ltd.*, 81 USPQ2d at 1448.

inconsequential variation that does not change the mark's meaning or commercial impression.[15]

However, we find that the display of Applicant's mark as MOSTLY MINNESOTA, ONE WITH EVERYTHING on Applicant's Facebook site (specimen page five) is not a substantially exact representation of the MOSTLY MN ONE WITH EVERYTHING mark in Applicant's drawing. As to meaning, MN is a widely recognized abbreviation of Minnesota. The two terms nevertheless are significantly different both aurally and visually, and in the context of the mark and goods at issue, MN may not be perceived as meaning the state abbreviation. Thus, unlike the variations of Applicant's mark discussed above, this variation is not inconsequential.

### C. Advertising or Displays Associated With the Goods?

The Examining Attorney also contends the pages of the specimen show mere advertising and not a display associated with goods, and therefore do not show proper use of the mark in commerce. Specifically, the Examining Attorney argues that the Internet pages are "online advertising that appears on websites and in social media"[16] and "function only to promote and inform the public about applicant's clothing."[17]

---

[15] Notwithstanding our finding here, we would be remiss not to note that the best practice is for an applicant to submit a specimen of use displaying the mark in a consistent manner that matches the mark as it appears on the drawing.

[16] 11 TTABVUE 4.

[17] 11 TTABVUE 5.

"There is nothing on either specimen that qualifies them to be online point of sale displays."[18] On this argument, we fully agree with the Examining Attorney.

Under Section 45 of the Trademark Act, 15 U.S.C. § 1127, a trademark is used in commerce when "it is placed in any manner on the goods or their containers or the displays associated therewith …." *See also* Trademark Rule 2.56(b)(1), 37 C.F.R. § 2.56(b)(1). As the Court pointed out in examining whether the webpage specimens in *Siny* qualified as a display associated with the goods, "[m]ere advertising is not enough to qualify as such a display." *Siny*, 2019 USPQ2d 127099, at *2-3 (citing *Powermatics, Inc. v. Globe Roofing Prods. Co.*, 341 F.2d 127, 144 USPQ 430 (CCPA 1965) ("[I]t [is] well settled that mere advertising and documentary use of a notation apart from the goods do not constitute technical trademark use.")) (further citations omitted).

The determination of whether any one of the pages of the proffered specimen is merely advertising or serves the function of a display associated with the goods is a question of fact. *Id.*; *In re U.S. Tsubaki, Inc.*, 109 USPQ2d 2002, 2003 (TTAB 2014) (citing *In re Shipley Co.*, 230 USPQ 691, 694 (TTAB 1986)). "Factually, we need to ask whether the purported point-of-sale display provides the potential purchaser with the information normally associated with ordering products of that kind." *In re Anpath Grp. Inc.*, 95 USPQ2d 1377, 1381 (TTAB 2010) (citing *In re Marriott*, 459 F.2d

---

[18] 11 TTABVUE 5.

525, 173 USPQ 799, 800 (CCPA 1972); *see also Lands' End Inc. v. Manbeck*, 797 F. Supp. 511, 24 USPQ2d 1314, 1316 (E.D. Va. 1992); *Shipley*, 230 USPQ at 693-94).

Displays associated with the goods, including online displays, typically must be point-of-sale displays. *Lands' End*, 24 USPQ2d at 1316 ("A crucial factor in the analysis is if the use of an alleged mark is at a point of sale location. A point of sale location provides a customer with the opportunity to look to the displayed mark as a means of identifying and distinguishing the source of goods."), *cited in Siny*, 2019 USPQ2d 127099, at *3; *see also Sones*, 93 USPQ2d at 1122 (quoting *In re Osterberg*, 83 USPQ2d 1220, 1222-23 (TTAB 2007) ("In [*Lands' End*], the determinative factor was that the mark was used at the point of sale.")). The Board has held:

> [T]o be more than mere advertising, a point-of-sale display associated with the goods must do more than simply promote the goods and induce a person to buy them; that is the purpose of advertising in general. The specimen must be "calculated to consummate a sale."

*U.S. Tsubaki*, 109 USPQ2d at 2009 (quoting *In re Bright of Am., Inc.*, 205 USPQ 63, 71 (TTAB 1979)); *see also Avakoff v. S. Pac. Co.*, 764 F.2d 1097, 226 USPQ 435, 436 (Fed. Cir. 1985) (solicitation letters sent to retailers deemed mere advertisements in which use of the mark apart from the goods did not qualify as trademark use for the goods).

To be calculated to consummate a sale, the specimen must contain sufficient practical information about the goods and a way to order the goods, so as to put the prospective customer at the point of purchase. Examples include a catalog order form, a telephone number through which the consumer is invited to call in a purchase,

*Lands' End*, 24 USPQ2d at 1316, or in the case of webpage specimens, a way to "plac[e] orders for the goods via the Internet," *Anpath Grp.*, 95 USPQ2d at 1381, such as selecting goods and adding them to a virtual shopping cart.

On the other hand, a specimen fails to qualify as a point-of-sale display if it contains more limited information, and would require a prospective customer to "contact applicant to obtain preliminary information necessary to order the goods" before the prospective customer could actually place an order. *Anpath Grp.*, 95 USPQ2d at 1381; *see also U.S. Tsubaki*, 109 USPQ2d at 2005. In the context of affirming the Board's decision to reject a webpage specimen because it was not a point-of-sale display, the U.S. Court of Appeals for the Federal Circuit held:

> [The Board] noted the absence of information it considered essential to a purchasing decision, such as a price or range of prices for the goods, the minimum quantities one may order, accepted methods of payment, or how the goods would be shipped. The Board also considered the "For sales information:" text and phone number contact. It assumed that the phone number would connect a prospective customer to sales personnel, but it found that "if virtually all important aspects of the transaction must be determined from information extraneous to the web page, then the web page is not a point of sale." ("A simple invitation to call applicant to get information—even to get quotes for placing orders—does not provide a means of ordering the product." (quoting *In re U.S. Tsubaki, Inc.*, 109 USPQ2d 2002, 2005 (TTAB 2014))). The Board further noted the absence of any evidence (as opposed to attorney argument) of how sales are actually made—e.g., documentation or verified statements from knowledgeable personnel as to what happens and how.

*Siny*, 2019 USPQ2d 127099, at *3 (internal citations omitted).

The first page of Applicant's specimen features a tall tale concerning the discovery of a cache of Minnesota-themed tattoo images, and indicates that it is "displaying" two collections of these images on "mostly organic, made in the USA clothing by Royal

Apparel." It also displays an empty "cart" icon in the upper right corner for unspecified goods purchased in U.S. dollars, as well as links to search the "NORM COLLECTION" and "SOMN COLLECTION," and another link to "SHOP." Inasmuch as page one is the only page from Applicant's website (pages two through five being from Applicant's Instagram and Facebook sites) the contents of the pages under the links for the two collections and the "SHOP" page referenced on page one are not in the record.

Applicant argues:

> In this instance, Applicant's specimen is an image from the webpage of the company, MN Apparel LLC, located at <mnapparel.com>.
>
> The at-issue specimen includes a textual description, describing the goods as "mostly organic, made in the USA clothing." This description appears above the at-issue mark. Directly below the mark is a link to shop for the goods, providing a means to order the goods as required by TMEP § 904.03(i). The at-issue specimen fulfills all the requirements for a webpage to be an acceptable specimen and should not prevent the mark from being registered.[19]

We disagree. The cited section of the TMEP, section 904.03(*i*), opens with the following guidance:

### 904.03(*i*)  Electronic Displays

A web page that displays a product can constitute a "display associated with the goods" if it:

---

[19] 9 TTABVUE 7-8. At oral hearing, Applicant further argued that page one of its specimen functions as a shelf-talker. We do not find this argument persuasive inasmuch as the specimen is comprised of web pages, not tangible displays and, as discussed infra, the specimen fails to provide the necessary information for the web pages to serve as a point of sale display. *See* TMEP § 904.03(i) and authorities cited therein.

(1) contains a picture or textual description of the identified goods;

(2) shows the mark in association with the goods; and

(3) provides a means for ordering the identified goods.

(citations omitted).

The first page of Applicant's specimen indicates to visitors to its website that it is a producer of clothing; that two collections of these clothes may be viewed on different pages; and that viewers may shop on yet another page. Despite the presence of a "cart" icon at the top of the page, it lacks information necessary to purchase the goods, including price range, methods of payment and shipping, or even the specific articles of clothing Applicant is offering for sale. Simply put, page one of the specimen provides no means for ordering clothing items that, in addition, are not displayed or described in any detail. The "cart" icon suggests that viewers may buy something, but the page supplies no information regarding the nature of the goods offered for sale. Rather, viewers of page one must visit other pages of Applicant's website in order to determine what clothing items are offered and to consummate a sale. *See, e.g.*, *Anpath Grp.*, 95 USPQ2d at 1381. Thus, this first page does not constitute a display associated with the goods.

The second page of the specimen, a screenshot from Applicant's Instagram page, also discusses the "treasure trove of #SOMN and #NORMN tattoo images belonging to #PaulBunZEN on USA organic cotton," and includes photographs of a trucker hat, sweatshirt and another article of clothing presumably displaying these images. However, page two does not include any of the information discussed above that is

necessary or calculated to consummate a purchase of any of Applicant's goods. Nor does page two include any links or other indicia that purchases may be made on a separate page, together with any such separate page(s). This page does not qualify as a display associated with the goods.

Neither does the third page of the specimen, which constitutes a screenshot from Applicant's Facebook site. It features the same tall tale from page one concerning the discovery of a cache of Minnesota-themed tattoo images, and indicates that it is "displaying" two collections of these images on "mostly organic, made in the USA clothing by Royal Apparel." Nonetheless, there is neither information necessary to consummate a sale of Applicant's goods nor links or other indicia regarding a method for doing so on any corresponding pages, nor are the goods described in any detail.

The fourth page of the specimen, a screenshot from the "Shop" page of Applicant's Facebook site, is the only page of Applicant's specimen that displays its goods, specifically, photographs of tee shirts, sweatshirts, hoodies, beanie hats and trucker caps, along with pricing information and the hot button "Shop Now." However, as discussed above, page four displays Applicant's name, MN Apparel LLC, but no version of the applied-for mark. It does not constitute a display associated with the goods.

The fifth page of Applicant's specimen, a screenshot from the "About" page of Applicant's Facebook site, features the following: "The legendary Paul BunZen NORMN & SOMN tattoo collections on high quality T-shirts, Sweatshirts, Beanies and Trucker Hats." However, page five of Applicant's specimen does not display an

acceptable version of the applied-for mark or, aside from a "Shop" tab located on the left side, any information necessary to consummate a sale of its identified goods. It, like the first four pages, does not constitute a display associated with the goods.

In sum, pages one through three and page five fail to include sufficient information to function as a point of sale display associated with the identified goods. *See, e.g.*, *Anpath Grp.*, 95 USPQ2d at 1381; *U.S. Tsubaki*, 109 USPQ2d at 2005. Page four arguably would function as a point of sale display, but fails to indicate use of any of the several permutations of the applied-for mark.

Per Trademark Rule 2.56, "To constitute a display associated with the goods, a specimen must show use of the mark directly associated with the goods and such use must be of a point-of-sale nature." 37 C.F.R. § 2.56(a)(1). However, "[b]oth precedent and examination guidance make clear that in assessing the specimens, consideration must be given not only to the information provided by the specimen itself, but also to any explanations offered by Applicant clarifying the nature, content, or context of use of the specimen that are consistent with what the specimen itself shows." *In re Pitney Bowes, Inc.*, 125 USPQ2d 1417, 1420 (TTAB 2018); *cf. In re DSM Pharm., Inc.*, 87 USPQ2d 1623, 1626 (TTAB 2008) ("In determining whether a specimen is acceptable evidence of service mark use, we may consider applicant's explanations as to how the specimen is used, along with any other available evidence in the record that shows how the mark is actually used."). "When a web-page specimen appears to be merely advertising, statements by the applicant that the specimen is used in connection with the sale of the goods, without evidence or a detailed explanation of the manner of use,

will not suffice to establish that the specimen is a display associated with the goods." TMEP § 904.03(i); s*ee also In re Osterberg*, 83 USPQ2d at 1224 (finding that applicant's mere statement in a signed declaration that copies of the web page were distributed at sales presentation lacked sufficient detail to transform the web page from an advertisement into a display associated with the goods). In this case, even viewing pages three through five – all from Applicant's Facebook site – together, Applicant has provided no evidence, e.g., documentation or verified statements from knowledgeable personnel to explain the manner in which a potential consumer viewing these pages may purchase the identified goods under the mark.

We find, as a result, that none of the five pages of Applicant's specimen, whether viewed individually or as a group, qualifies as a display associated with the goods.

## III. Decision:

Applicant's specimen, on pages one through three, displays acceptable versions of the applied-for mark, and the Examining Attorney's refusal based on the asserted failure of the specimen to show a substantially exact representation of the mark is reversed. Nonetheless, we affirm the refusal to register Applicant's mark MOSTLY MN ONE WITH EVERYTHING pursuant to Sections 1 and 45 of the Trademark Act, on the ground that the specimen of use fails to show the applied-for mark in use in commerce as a display associated with the goods.