Paper No. 27
DEB

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

In re CTB, Inc.

_____

Serial No. 74/136,476

_____

David J. Marr of Trexler Bushnell Giangiorgi & Blackstone, Ltd. for CTB, Inc.

Radhika Raju, Trademark Examining Attorney, Law Office 109 (Ron Sussman, Managing Attorney).

_____

Before Sams, Walters and Bucher, Administrative Trademark Judges.

Opinion by Bucher, Administrative Trademark Judge:

CTB, Inc., an Indiana corporation, filed an application for registration of the mark "TURBO and design," as shown below, for "ventilation systems for poultry and livestock houses comprising electric blowers, ducts and controls"[1]:

---

[1] Serial No. 74/136,476, in International Class 11, filed February 5, 1991, based upon an allegation of a *bona fide*



The mark published for opposition in the *Trademark Official Gazette* on July 7, 1992 having this special form drawing.  Although Seabreeze Electric Corporation filed Opposition Number 90,374 in December 1992, that proceeding was dismissed on March 4, 1994.  This was done with opposer's consent following an amendment to applicant's identification of goods that the parties had agreed upon.[2]  Then in February 1997 at the time applicant filed its statement of use (claiming use on September 20, 1996), applicant requested that the mark be amended to a typed drawing (merely "TURBO").  This was consistent with the specimens of record, where the mark was shown in context as follows:

---

intention to use the mark in commerce.  Although the original intent to use application included goods in International Classes 6 and 7, applicant deleted these goods in February 1996 as part of the third request for an extension of time to file a statement of use.

[2]    The term "fans" in applicant's original identification of goods was changed to "blowers."



At that point, the Trademark Examining Attorney refused to accept applicant's request that it be allowed to amend its drawing to conform the mark to the newly submitted specimens of record, on the ground that such an amendment would constitute a material alteration of the mark, and hence was precluded by the Trademark Rules. Specifically, Trademark Rule 2.72(a) provides that amendments may not be made to the description or drawing of the mark if the character of the mark is materially altered.[3]

Applicant has appealed the continuing refusal to amend the mark and that issue is the sole subject of this appeal. Both applicant and the Examining Attorney have filed briefs, but an oral hearing was not requested. We affirm the refusal to register inasmuch as we agree with the Trademark Examining Attorney that this proposed amendment

---

[3] Section 2.72 states.
(a) Amendments may not be made to the description or drawing of the mark if the character of the mark is materially altered. The determination of whether a proposed amendment materially alters the character of the mark will be made by comparing the proposed amendment with the description or drawing of the mark as originally filed.

to the drawing alters significantly the overall commercial impression of this mark.

Applicant argues that the mark as it appears on the specimens of use and as applicant seeks to change it ("TURBO"), does not constitute a material alteration of the mark from the special form shown on the drawing page of the original application.  In support of this contention, applicant argues that the word "TURBO" is the essence of both forms of applicant's mark.  Accordingly, applicant takes the position that presenting the mark now in typewritten form creates the same commercial impression as did the original drawing.  Further, applicant argues that since the word "turbo" shares some of the same etymological roots as the word "whirlwind," the swirling design comprises nothing more than a mere embellishment that reinforces the word "turbo" before fading into the background.  As to the interests of any third parties, applicant argues that potential opposers would be concerned about the word "Turbo" and therefore no republication of the mark as amended would be required under the law. Applicant points out that many of the recorded cases finding material alteration deal with amendments where the amended form of the mark contained *additions* while, in the

4

instant case, applicant is trying to *delete* matter from the original drawing.

The Trademark Examining Attorney points out that the swirling design applicant seeks to delete is not just some unidentifiable graphic. Rather, applicant itself has referred to the feature as a "…design in the form of a common cyclone or tornado." The Trademark Examining Attorney argues that:

> The applicant's original mark, a swirling tornado design with the stylized wording TURBO, creates a different commercial impression from just the word TURBO in block letter form. The tornado design is <u>not</u> a background design. In fact, this design is the first thing a consumer would notice when viewing the mark both because it is on the left-hand side and … because it is a dark swirling pattern that immediately catches the eye. (brief, pp. 2 – 3).

The Trademark Examining Attorney concludes that "[c]learly, the tornado design is an integral part of applicant's mark and deletion of this portion would create a different commercial impression and therefore constitutes a material alteration." (Trademark Examining Attorney's appeal brief, p. 3).

In looking more closely at Rule 2.72(a), we note that the touchstone for permissible amendments to the mark is that the mark retains the same overall commercial impression. *See Visa International Service Assn. v. Life-*

5

*Code Systems*, 220 USPQ 740, 743-44 (TTAB 1983) ["The modified mark must contain what is the essence of the original mark, and the new form must create the impression of being essentially the same mark…"].

While there is necessarily some subjectivity in applying this standard to a particular fact pattern, we look to past decisions to guide us in making this determination. It is also important to note that when making a determination about material alteration during the *ex parte* examination process, the Trademark Examining Attorney must make a distinction between two categories of amendments. *See In re ECCS, Inc*., 94 F.3d 1578, 39 USPQ2d 2001 (Fed. Cir. 1996). In the first category are amendments to the drawing proposed in order to conform the original drawing to the mark sought to be registered as shown by the specimens as filed with the application – i.e., showing the mark as actually used. This first category of amendments, as defined in *ECCS*, is also broad enough to include an internal inconsistency between the version shown in the drawing and that shown on the foreign registration certificate filed with the U.S. application, if the U.S. trademark application is based upon a foreign registration under Section 44(e) of the Act. *See In re*

6

*Dekra e.V.*, 44 USPQ2d 1693 (TTAB 1997).[4]  Our principal reviewing court found in such cases that amendments involving a mark in the drawing slightly different from the mark displayed on the specimens should be permitted under Trademark Rule 2.72.  However, the second category involves amendments that attempt to change the drawing of the mark in the application as originally filed where there has been no ambiguity about the mark.  This would include use-based applications where there is clearly no inconsistency between the specimens and drawing as originally filed.

In the instant case, there was no ambiguity as to the mark identified in the application papers as originally filed.  As in *In re Finlay Fine Jewelry Corp*., 41 USPQ2d 1152 (TTAB 1996), this case involves an attempt to amend the mark after an unambiguous, intent to use application had been filed.  As noted in *Finlay*, an amendment to the drawing subsequent to the filing date, even to reflect the mark as used later by applicant, falls into the second *ECCS* category of amendments to drawings.

---

[4]     Contrast this result with the situation in *In re Hacot-Colombier*, 105 F.3d 616, 41 USPQ2d 1523 (Fed. Cir. 1997) where the applicant filed the U.S. application claiming a right of priority under Section 44(d).  Here, the only mark shown in the application as originally filed appeared on the drawing page. There, the file did not contain the foreign registration certificate showing the foreign mark until ten months after the original filing date.

Applicant argues that on the substantial question of material alteration we are asked to decide herein, its case is similar to the facts of *Finlay*. In that case, the question was whether it was a permissible amendment under Rule 2.72(a) to change the typed drawing, "NY JEWELRY OUTLET" to another typed drawing spelling out "NY…" e.g., "NEW YORK JEWELRY OUTLET." However, most consumers would have verbalized the "NY" portion of the mark in the original drawing as "NEW YORK" in any case. Accordingly, we find those facts cannot be deemed analogous to the present case.

Both the Trademark Examining Attorney and applicant have cited to *Visa International Service Assn. v. Life-Code Systems*, *supra*. Like the facts in *Finlay*, the amendment in *Visa* involved minor changes. The marks in that case involved identical designs and words, where the elements were merely rearranged.



The inversion of the triangular device (to reverse the visual impact of the airplane's ground-ward orientation!) is a change that most consumers might be hard-pressed even

8

to notice.  In the *Visa* case, the Board correctly perceived these technical changes in the logo design to be *de minimis* since the two marks created an identical commercial impression.

Applicant also relies on *In re Larios*, 35 USPQ2d 1214 (TTAB 1995).  The requested amendment was as follows:



The Board agreed with applicant that this amendment was permissible since it did not comprise a material alteration.  Specifically, the relative size of the words "GRAN VINO" and "VINO DE," the fact that they are common designations for wine, and their arrangement in relation to the dominant, source-indicating matter (e.g., "MALAGA LARIOS") located on otherwise identical, tombstone-shaped

labels, all pointed to a correct conclusion that the commercial essence of the two labels was the same.

Citing to another case where the amendment was indeed permitted, applicant points to *Dekra*, *supra,* where the following amendment was permitted:



However, we note that in the event that case had fallen into the second category of *ECCS* fact patterns, as does the current case, the Board would have certainly found there to be material alteration between these marks:

> We would agree that an amendment of the mark to DEKRA and D design would be a material alteration of the D design, if the D design were, in fact, the mark for which application had been made…" *Dekra,* *supra* at 1696.

While the outcome of *In re Abolio y Rubio S.A.C.I. y G,* 24 USPQ2d 1152 (TTAB 1992), like *Dekra*, might well be different if decided today in view of *ECCS*, one

10

notes immediately a contrast in the visual impressions of the following respective marks:

## LA PAULINA



In *Abolio*, the Board found that the prominent pictorial elements in applicant's proposed amended drawing above (e.g., a label containing a cartoon-like, young girl standing on a cross section of cheese) constituted a material alteration from the typed drawing, "LA PAULINA" alone, as it created a very different impression. *See also*, *In re Wine Society of America Inc.,* 12 USPQ2d 1139 (TTAB 1989) [addition of crown design and banner design bearing the words "IN VINO VERITAS" is a material alteration of typewritten word mark "THE WINE SOCIETY OF AMERICA"]; *In re Pierce Foods Corp.,* 230 USPQ 307, 308-309 (TTAB 1986) [addition of house mark, "PIERCE," to product mark "Chik'n-Bake and design" is a material alteration]; *In re Vienna Sausage Mfg. Co.,* 16 USPQ2d 2044 (TTAB 1990) [Because of a likelihood of confusion refusal, applicant

11

sought to amend its application by penciling the designation "MR. SEYMOUR" into the wiener chef's cap.]



The Trademark Examining Attorney was upheld in that the Board found that this change involved a material alteration.

We also note a decision by the Commissioner of the U.S. Patent and Trademark Office having the following request for amendment, where material alteration was found to exist:

                    FYER-WALL

> It is clear from a comparison of the registrant's mark as registered in 1950 and the current mark now presented under Section 7(d), that the latter represents a material alteration from the mark as originally registered.  The letters R and W in the mark as registered were greatly emphasized by their size and the bracketing around them.  Such a portrayal of these letters effectively made the mark "FYER-WALL" recognizable as "RW FYER-WALL."  This emphasis on the letters R and W is dropped by the proposed amendment and the overall appearance of the mark is changed.  A

12

modification of the mark which eliminates such a prominent feature represents a material alteration of the character of the mark which renders the amendment unacceptable under Section 7(d).  *See In re E. M. Townsend & Co*., 143 USPQ 318  (Comr., 1964).

*In re Richards-Wilcox Manufacturing Co*., 181 USPQ 735

(Comr.Pats. 1974).

Similarly, in a more recent decision from the

Commissioner (e.g., proposed deletion of highly stylized

display features of mark "IN•VEST•MENTS"), the petitioner

made arguments similar to those made by applicant herein:

> [T]hat the current mark as registered is one hyphenated word with a minimal background framing design.  The amendment at issue merely removes the hyphens in the registered mark and maintains the commercial impression of one word -- the word "investments."  As amended no change is made in the meaning of the word mark.



The Commissioner found as follows:

> …[C]onsideration of only the terminology contained in a mark is not the test to determine whether a proposed amendment constitutes a material alteration…  Contrary to petitioner's assertion of "a minimal background framing design," clearly the registered mark contains salient design features apart from the word portion…

*In re Dillard Department Stores Inc*., 33 USPQ2d 1052 (Comr. Pats. 1993).

In reviewing these cases, we agree with applicant that many of the reported cases finding material alteration do involve attempts to add new material to the mark.[5]  By contrast, the instant case involves deleting material from the mark.  However, we find that the deletion of matter from a mark should be evaluated according to the same standard as a proposed addition to the mark.

For example, the Office often finds that the deletion of the generic name of the goods (e.g., from "TURBO BLOWERS" to simply "TURBO") would not generally constitute a material alteration (unless it was so integrated into the mark that the deletion would alter the commercial impression).  Similarly, sometimes even descriptive or other types of nondistinctive matter may be deleted, if the overall commercial impression is not altered.  We find,

---

[5]    The original drawing in a trademark application serves the purpose of putting third parties on notice while establishing for applicant a contingent, constructive date of first use on a nationwide basis.  Public policy arguments (e.g., those surrounding the need to provide meaningful notice to third parties who search the Office records) are arguably greater if entirely new matter is being added by way of an amended drawing. However, given that each case of likelihood of confusion is decided on the marks in their entireties, deletions of matter should be judged by the same standard of overall commercial impression.

however, that the swirling cyclone design in the instant case has to be deemed to be distinctive matter.

Both the Trademark Examining Attorney and applicant discuss the degree of "integration" of the swirling design. For example, the Trademark Examining Attorney contends that "[t]he design is an integral part of the word portion of the mark, because it is attached to the crossbar of the letter "t" in TURBO." While we agree that the swirling device is an essential part of the original mark and hence "integrated" into the composite, whether or not the tip of the funnel physically touches the crossbar of the letter "t" is not the sole criterion leading us to this result.

Decision: We sustain the refusal to register, inasmuch as applicant's attempt to amend the drawing as set out herein would result in a material alteration.

J. D. Sams

C. E. Walters

D. E. Bucher
Administrative Trademark
Judges, Trademark Trial and
Appeal Board

15