This Opinion is a
Precedent of the TTAB

Mailed: December 1, 2020

**UNITED STATES PATENT AND TRADEMARK OFFICE**

‒‒‒‒

**Trademark Trial and Appeal Board**

‒‒‒‒

*In re Lee Greenwood*

‒‒‒‒

Serial No. 87168719

‒‒‒‒

Paul W. Kruse of Bone McAllester Norton PLLC
    for Lee Greenwood

Barbara A. Gaynor, Trademark Examining Attorney, Law Office 115,
    Daniel Brody, Managing Attorney.

‒‒‒‒

Before Greenbaum, Heasley, and Johnson,
    Administrative Trademark Judges.

Opinion by Heasley, Administrative Trademark Judge:

Applicant, Lee Greenwood, seeks registration on the Principal Register of the proposed mark **GOD BLESS THE USA** (in standard characters) for "accent pillows; decorative centerpieces of wood," in International Class 20 and "decorative wall hangings, not of textile" in International Class 27.[1]

---

[1] Application Serial No. 87168719 was filed on September 12, 2016, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere and use in commerce since at least as early as July 13, 2016 as to both classes of goods.

Page references to the application record are to the downloadable .pdf version of the USPTO's Trademark Status & Document Retrieval (TSDR) system. References to the briefs, motions and orders on appeal are to the Board's TTABVUE docket system.

The Trademark Examining Attorney has refused registration of Applicant's proposed mark under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that it fails to function as a trademark. When the refusal was made final, Applicant appealed and filed a brief seeking reversal of the refusal to register.[2]

The day after the Examining Attorney filed her brief,[3] Applicant belatedly filed a request to remand the application in order to amend the proposed mark to **THE LEE GREENWOOD COLLECTION GOD BLESS THE USA**.[4] "As a best practice, an applicant seeking to obviate a refusal by proposing an amendment to an application should propose the amendment as early as possible during prosecution." *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, *1 (TTAB 2020). Nevertheless, the Board suspended the appeal and remanded the application to the Examining Attorney for consideration of the proposed amendment.[5] *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 1205.01 (2020) ("A request for remand to consider an amendment will be granted upon a showing of good cause. … If the request for remand is granted, the Board will suspend proceedings with respect to the appeal and remand the application to the examining attorney for consideration of the amendment.").

On remand, the Examining Attorney refused to accept the proposed amendment

---

[2] 8 TTABVUE.

[3] 10 TTABVUE.

[4] 11 TTABVUE.

[5] 12 TTABVUE.

on the ground that it would materially alter the applied-for mark.[6] Applicant protested that he was merely adding his previously registered mark, **THE LEE GREENWOOD COLLECTION**[7] for the same goods, to his proposed mark, **GOD BLESS THE USA**, thereby enabling it to function as a trademark.[8] The Examining Attorney nonetheless maintained and made final her determination that the proposed amendment would materially alter the original applied-for mark. She accordingly refused the proposed amendment, and advised Applicant that the previous drawing, **GOD BLESS THE USA**, would remain the operative drawing for the applied-for mark.[9] *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 807.17 (Oct. 2018) ("If an applicant submits an amendment to the drawing and the examining attorney determines that the amendment is unacceptable, the examining attorney must issue an Office action refusing to accept the amendment and advising the applicant that the amendment will not be entered, and that the previous drawing remains the operative drawing.").

The appeal proceeded, posing two issues: (I) whether the original proposed mark, **GOD BLESS THE USA**, fails to function as a trademark and if so, (II) whether the proposed amendment, **THE LEE GREENWOOD COLLECTION GOD BLESS THE USA**, was a material alteration of the original applied-for mark. We answer both questions in the affirmative, and affirm the refusal to register.

---

[6] Nov. 13, 2018 Office Action.

[7] Reg. No. 5208310, issued May 23, 2017 ("COLLECTION" disclaimed).

[8] May 13, 2019 Response to Office Action.

[9] June 7, 2019 Office Action, 13 TTABVUE.

### I. Whether the Original Applied-For Mark Fails to Function as a Trademark

We first address whether the applied-for mark functions as a trademark, because, if it does, we need not reach the amendment issue. A proposed trademark is registrable only if it functions as an identifier of the source of the applicant's goods or services. *In re Yarnell Ice Cream, LLC*, 2019 USPQ2d 265039, *16 (TTAB 2019). To function as a trademark, an applicant's proposed mark must, by definition, "identify and distinguish his or her goods, … from those manufactured or sold by others and … indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127, *quoted in In re Texas With Love, LLC*, 2020 USPQ2d 11290, *2 (TTAB 2020). *See also In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976) ("[T]he classic function of a trademark is to point out distinctively the origin of the goods to which it is attached"). "Matter that does not operate to indicate the source or origin of the identified goods or services and distinguish them from those of others does not meet the statutory definition of a trademark and may not be registered, regardless of the register on which registration is sought." *In re AC Webconnecting Holding B.V.*, 2020 USPQ2d 11048, *2-3 (TTAB 2020).

The critical inquiry in determining whether a proposed mark functions as a trademark is how it would be perceived by the relevant public. *In re Vox Populi Registry Ltd.*, 2020 USPQ2d 11289, *4 (TTAB 2020); *In re TracFone Wireless, Inc.*, 2019 USPQ2d 222983, *1 (TTAB 2019) ("The key question is whether the asserted mark would be perceived as a source indicator for Applicant's [goods or] services."); *D.C. One Wholesaler, Inc. v. Chien*, 120 USPQ2d 1710, 1713 (TTAB 2016). To function as a trademark, the proposed mark must be used in a manner calculated to project to

purchasers or potential purchasers a single source or origin for the goods. *In re DePorter*, 129 USPQ2d 1298, 1299 (TTAB 2019). "Thus, a threshold issue in some cases (like this one) is whether the phrase in question in fact functions to identify the source of the services recited in the application and distinguish them from the services of others or, instead, would be perceived merely as communicating the ordinary meaning of the words to consumers." *In re Wal-Mart Stores, Inc.*, 129 USPQ2d 1148, 1149 (TTAB 2019). "Where the evidence suggests that the ordinary consumer would take the words at their ordinary meaning rather than read into them some special meaning distinguishing the goods from similar goods of others, then the words fail to function as a mark." *In re Ocean Tech., Inc.*, 2019 USPQ2d 450686, *3 (TTAB 2019) (internal punctuation omitted).

Consumers ordinarily take widely-used, commonplace messages at their ordinary meaning, and not as source indicators, absent evidence to the contrary. *See In re Mayweather Promotions, LLC*, 2020 USPQ2d 11298, *1 (TTAB 2020) ("Widely used commonplace messages are those that merely convey ordinary, familiar concepts or sentiments and will be understood as conveying the ordinary concept or sentiment normally associated with them, rather than serving any source-indicating function."). "Messages that are used by a variety of sources to convey social, political, religious, or similar sentiments or ideas are likely to be perceived as an expression of support for, or affiliation or affinity with, the ideas embodied in the message rather than as a mark that indicates a single source of the goods or services." *In re DePorter*, 129 USPQ2d at 1302 n.14 (quoting TMEP § 1202.04(b)). "The more commonly a phrase is used, the less likely that the public will use it to identify only one source and the less

likely that it will be recognized by purchasers as a trademark." *In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010) *quoted in In re Peace Love World Live, LLC*, 127 USPQ2d 1400, 1402 (TTAB 2018).

To determine how consumers are likely to perceive the phrase sought to be registered, we look not only to the specimens, but to other evidence of record showing the phrase as used in general parlance. *In re Wal-Mart*, 129 USPQ2d at 1150. The Examining Attorney maintains that Applicant's applied-for mark, **GOD BLESS THE USA**, is a common patriotic message, analogous to and synonymous with "God Bless America."[10] *See* TMEP § 1202.04(b) ("Derivatives or variations of widely used messages also fail to function as marks if they convey the same or similar type of information or sentiment as the original wording."). The wording is, in fact, commonly used by many different sources on a vast array of goods, she notes, as illustrated by evidence obtained from over three dozen third-party websites.[11] The following are representative samples from various sources:



12



13

---

[10] 10 TTABVUE 4.

[11] 10 TTABVUE 4-9.

[12] CafePress.com, March 17, 2017 Office Action TSDR at 5.

[13] CafePress.com, *Id*. at 11.



14

15

16

17

18

19

[14] Zazzle.com, *Id.* at 14.

[15] Shop.ColonialWilliamsburg.com, *Id.* at 22.

[16] SupportStore.com, *Id.* at 24.

[17] CelebratingHomeDirect.com, *Id.* at 29.

[18] ChristmasLoft.com, *Id.* at 36.

[19] HobbyLobby.com, *Id.* at 38.

 

 

Thus, the record evidence demonstrates that a variety of sources prominently display the phrase **GOD BLESS THE USA** on a range of household items such as mugs, trays, cutting boards, pillows, ornaments, posters, flags, and the like. This common use by third parties renders it less likely that the public would perceive the phrase as identifying a single commercial source. *In re Wal-Mart*, 129 USPQ2d at 1156. In that sense, this case is reminiscent of *D.C. One Wholesaler v. Chien*, where the phrase "**I ♥ DC**" was commonly available on a range of goods, from apparel and aprons to commuter cups and keychains. 120 USPQ2d at 1713-14. There, the Board

---

[20] Etsy.com Aug. 11, 2017 Office Action TSDR at 30.

[21] Etsy.com, *Id.* at 34.

[22] Houzz.com, *Id.* at 42.

[23] DiscountDecorativeFlags.com, *Id.* at 50.

found that the "widespread ornamental use of the phrase by third parties 'is part of the environment in which the [proposed mark] is perceived by the public and . . . may influence how the [proposed mark] is perceived.'" *Id*. at 1716 (quoting *In re Hulting*, 107 USPQ2d 1175, 1178 (TTAB 2013); *In re Tilcon Warren Inc.*, 221 USPQ 86, 88 (TTAB 1984)). Here, as there, the record indicates that the phrase **GOD BLESS THE USA** is displayed, not as a source indicator, but as an expression of patriotism, affection, or affiliation with the United States of America. *Id*.

Applicant, a country music artist, insists that "God Bless the USA" would be commonly recognized as his signature song. He quotes Wikipedia:

> "God Bless the USA" is an American patriotic song written and recorded by country music artist Lee Greenwood, and is considered to be his signature song. The first album it appears on is 1984's You've Got a Good Love Comin'. It reached No. 7 on the Billboard magazine Hot Country Singles chart when originally released in the spring of 1984, and was played at the 1984 Republican National Convention with President Ronald Reagan and first lady Nancy Reagan in attendance, but the song gained greater prominence during the Gulf War in 1990 and 1991, as a way of boosting morale. The popularity of the song rose sharply after the September 11 attacks and during the 2003 invasion of Iraq, and the song was re-released as a single, re-entering the country music charts at No. 16 and peaking at No. 16 on the Billboard Hot 100 pop chart in 2001.[24]

"The song 'God Bless the USA' has been downloaded at least two and half million times since reentering the Billboard Country Digital Song Sales Chart," Applicant points out.[25] He maintains that if one searches for "God Bless the USA" on the Google search engine, the first page of results refers to Applicant's song title.[26] In view of "Mr. Greenwood's talent and fame" and "the notoriety of his iconic song 'God Bless

---

[24] En.wikipedia.org, 8 TTABVUE 3, 14.

[25] 8 TTABVUE 3, 16.

[26] 8 TTABVUE 3, 9-12.

the USA' and his close association therewith…," Applicant contends that the public will regard the proposed mark **GOD BLESS THE USA** as his trademark.[27]

However, "[i]t is well settled that not every designation that is placed or used on a product necessarily functions as a trademark for said product and not every designation adopted with the intention that it perform a trademark function necessarily accomplishes that purpose." *D.C. One Wholesaler v. Chien*, 120 USPQ2d at 1713; *accord In re Texas With Love*, 2020 USPQ2d 11290 at *2-3. Because there are no limitations to the channels of trade or classes of consumers of the goods identified in the application, the relevant consumers are members of the general public, who may or may not be music aficionados. *CBS Inc. v. Morrow*, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983); *Bell's Brewery, Inc. v. Innovation Brewing*, 125 USPQ2d 1340, 1345 (TTAB 2017), *cited in In re Mayweather Promotions*, 2020 USPQ2d 11298 at *3. In any event, even if these consumers were familiar with the song and Applicant himself, they may not associate the household items identified in the involved application with Applicant or his song, when so many third parties offer household items bearing the same wording.

In sum, based on the record evidence, we find that Applicant's proposed mark GOD BLESS THE USA is "devoid of source-identifying significance and therefore fails to function as a trademark." *In re Hulting*, 107 USPQ2d at 1181.

---

[27] 8 TTABVUE 4-5.

## II. Whether Applicant's Proposed Amendment Would Materially Alter the Original Applied-For Mark

As a fallback position, Applicant seeks to amend his application to include his registered mark **THE LEE GREENWOOD COLLECTION.**[28] Applicant points out that this registered mark appears close to his applied-for mark **GOD BLESS THE USA** on the specimens he provided:[29]



[30]

The prior registration identifies the same goods identified in the present application: "accent pillows, decorative centerpieces of wood" in Class 20 and "decorative wall hangings, not of textile" in Class 27. Applicant accordingly proposes to amend his applied-for mark to add his prior registered mark. The resultant

---

[28] Reg. No. 5208310.

[29] 8 TTABVUE 3-4.

[30] Specimens submitted with application, Sept. 12, 2016.

proposed amended mark would be **THE LEE GREENWOOD COLLECTION GOD BLESS THE USA** in standard characters.

The Examining Attorney refused to accept this proposed amendment on the ground that it was a material alteration of the original applied-for mark.[31] Resolution of this issue hinges on Trademark Rule 2.72, which provides:

> (a) In an application based on use in commerce under section 1(a) of the Act, the applicant may amend the description or drawing of the mark **only if**:
>
> …
>
> (2) **The proposed amendment does not materially alter the mark. The Office will determine whether a proposed amendment materially alters a mark by comparing the proposed amendment with the description or drawing of the mark filed with the original application.**

37 C.F.R. § 2.72(a)(2) (emphasis added).

Thus, the issue is whether Applicant's proposed amendment, **THE LEE GREENWOOD COLLECTION GOD BLESS THE USA**, would materially alter his original applied-for mark. We determine this issue based on Applicant's request to remand, the Examining Attorney's pertinent Office Actions, and Applicant's response thereto.[32] *See* TMEP § 715.04(b) ("When proceedings with respect to the

---

[31] Nov. 13, 2018 Office Action. The Examining Attorney also found fault with the specimens: "The applicant is advised that even if the proposed amendment to the mark is allowed, the mark on the specimen originally submitted with the application is different than the mark shown in the proposed amended drawing. The mark on the originally submitted specimen is THE LEE GREENWOOD GOD BLESS THE USA HOME COLLECTION; the mark in the proposed amended drawing is THE LEE GREENWOOD COLLECTION GOD BLESS THE USA." Nov. 13, 2018 Office Action TSDR at 1 n.2, 13 TTABVUE 3. In view of our affirmances of the Examining Attorney's refusals, we do not reach this issue.

[32] 11-14 TTABVUE, Nov. 13, 2018 Office Action, May 13, 2019 Response to Office Action, June 7, 2019 Office Action.

appeal are resumed, the Board will take further appropriate action with regard to any additional ground of refusal.").

### A.   Applicant's and the Examining Attorney's Arguments

Applicant posits that his proposed amendment simply adds his previously registered mark, **THE LEE GREENWOOD COLLECTION**,[33] to his applied-for mark, **GOD BLESS THE USA**. Both marks are in standard characters, and both are for the same identified goods. Applicant maintains that the TMEP clearly allows him to amend the proposed mark to include his previously registered mark, as it states "An amendment adding an element that the applicant has previously registered for the same goods or services may be permitted." TMEP § 807.14(b).[34]

This TMEP section cites *Florasynth Labs., Inc. v. Mülhens*, 122 USPQ 284, 284 (Comm'r 1959). In that case, Mülhens' application to register **ELAN** for perfumes and cosmetics was opposed by registrant Florasynth Labs, which owned **ELAN TIBET** for perfume oil used in making perfumes and colognes. To settle their dispute, the parties agreed that applicant Mülhens would amend his application to add his registered trademark **4711** above **ELAN**. *Id*. The examiner refused to enter the amendment on the ground that it made a material change in the mark—a change prohibited by Trademark Rule 2.72, which then provided that "[a]mendments may not be made if the nature of the mark is changed thereby."

Applicant Mülhens petitioned the Commissioner, who ruled that:

> The addition of applicant's well-known registered mark to the mark sought
> to be registered, thus resulting in the composite mark being used by

---

[33] Reg. No. 5208310.

[34] Applicant's May 13, 2019 Response to Office Action at TSDR 4.

applicant, is not a material change which would require republication of the mark. The amendment should therefore be entered, and the examiner will take such action.

*Id.*

In the present case, Applicant Greenwood argues, consistently with *Florasynth*, that "[r]epublication of the amended mark is not required since Applicant's **THE LEE GREENWOOD COLLECTION** mark has been registered for the exact same goods set forth in this application."[35]

The Examining Attorney counters that "[a]dding previously registered matter to a mark is not an absolute right: 'An amendment adding an element that the applicant has previously registered for the same goods or services **may** be permitted.' TMEP §807.14(b) [emphasis added]."[36] In support of this position, she cites *In re John LaBatt Ltd.*, 26 USPQ2d 1077 (Comm'r 1992) a decision issued three decades after *Florasynth*. LaBatt sought to amend its registered mark, shown on the left below, to incorporate elements from another registration, shown on the right:



Registered Mark



Registration 1,423,165

The resultant proposed amended mark (which LaBatt was using in commerce) was:

---

[35] *Id.*

[36] Nov. 13, 2018 Office Action at 2.



**Mark Currently Used**

*Id*. at 1977-78.

The examiner refused LaBatt's proposed amendment on the ground that it sought to add new words and design elements that were never searched or published for opposition. *Id*. at 1078. LaBatt responded that the new elements already had been searched and published in conjunction with its previous Registration No. 1423165. *Id*. On consideration of LaBatt's petition, the Commissioner acknowledged *Florasynth*, but noted "[w]hether republication would be required is only one consideration in the determination of whether a mark has been materially changed." *Id*. The decision declared that LaBatt "does not seek to merely add an element from one registration to another. Rather, the applicant seeks to eliminate its original mark, and substitute another. The exception to the material alteration rule clearly does not encompass cases where the original mark disappears." *Id*.

Applicant argues that, unlike *LaBatt*, he merely proposes to add **THE LEE GREENWOOD COLLECTION** to the original applied-for mark **GOD BLESS THE USA**, so the original applied-for mark does not disappear.[37]

---

[37] May 13, 2019 Response to Office Action at 4-5.

*LaBatt*, however, was more nuanced than Applicant suggests. Beginning with the registered mark (in the upper left), the Commissioner observed:

> The mark as registered features a dark oval against a square label, with the letters JL filling most of the oval, and the words EXTRA STOCK superimposed, in smaller letters, over the JL. Across the top of the oval, in letters less than half the size of the EXTRA STOCK, are the words JOHN LABATT'S. Appearing on the bottom of the oval is a circular emblem showing a cabin.

> The proposed amendment to the mark eliminates the dark oval, the square label, the large letters JL, the word JOHN, and the circular emblem featuring a cabin. The addition of Registration 1,423,165 not only introduces new design elements, but changes the presentation of the words EXTRA STOCK, and alters the formerly unobtrusive display of the surname to make LABATT'S the most striking portion of the mark.

*Id*. at 1079.

The *LaBatt* decision concluded that "the test for whether a mark has been materially altered does not depend on whether the dominant portion of the original mark is still present in the amended form. The question is whether the proposed mark has a different commercial impression." *Id*. at 1078.

But there were other decisions interpreting what constitutes a material alteration of a mark between the decisions in *Florasynth* and *LaBatt*, and changes to Rule 2.72 as well. So simply choosing between *Florasynth* and *Labatt* does not fully answer the issue presented. Based on the evolution of the applicable Trademark Rules and case law concerning amendments to marks, discussed below, we hold that an applicant's proposed amendment adding previously registered matter for the same goods or services **may**, but not **must**, be permitted, depending on whether it materially alters the originally-applied for mark. TMEP § 807.14(b).

## B. Evolution of the Law Regarding Material Alteration

In 1983, the Board considered *Visa Int'l Serv. Ass'n v. Life-Code Sys., Inc.*, 220

USPQ 740 (TTAB 1983), in which Visa proposed amending its applied-for word and

design mark from  to  , because Visa believed that the image of

an airplane pointing downward was too negative. *Id.* at 743. The Board found the

amendment acceptable:

> The modified mark must contain what is the essence of the original mark, and the new form must create the impression of being essentially the same mark.
> …
> It is the opinion of the Board that the amendment to the drawing is not a material alteration of the mark. The Examining Attorney incorrectly refused to enter the amendment to the drawing when applicant sought to amend it. The two marks create the same commercial impression.

*Id.* at 743-44.

That same year, Trademark Rule 2.72 was amended so that the standard for

amending an applied-for mark was the same as for amending a registered mark:

"Amendments may not be made if the character of the mark is materially altered."[38]

Later decisions applied that standard when an applicant sought to add material

to a mark in an original application. For instance, in *In re Pierce Foods Corp.*, 230

USPQ 307 (TTAB 1986), the applicant sought to add its unregistered house mark

**PIERCE** to its applied-for stylized mark **CHIK'N-BAKE**:

---

[38] 37 C.F.R. § 2.72, 48 Fed. Reg. 23122-01, May 23, 1983.

**PIERCE**



The Board affirmed the examining attorney's refusal to accept the amendment, quoting TMEP Section 807.14(a): "An amendment may not be made if the mark is materially altered by the amendment. 37 CFR Sec. 2.72. This possibility more frequently arises when matter is added to the mark than when matter is deleted from the mark. It is for the Examining Attorney to decide whether the mark is materially altered by the amendment." *Id*. at 308 n.2. "[W]e do agree that the addition of the house mark, which is not itself the subject of a separate registration for these goods, presents a materially different mark." *Id*. at 308 (contrasting the case with *Florasynth* and following *Visa*).

Similarly, in *In re Nationwide Industries Inc.*, 6 USPQ2d 1882 (TTAB 1988), where the applicant proposed to add its house mark **SNAP** to **RUST BUSTER**, forming the amended mark **SNAP RUST BUSTER**, the Board applied the teachings in *Visa*, *Pierce*, and *Florasynth*. As in *Visa*, it noted, "the new and old forms of the mark must create essentially the same commercial impression." *Id*. at 1885. In *Pierce*, it noted, the addition of a house mark "would normally constitute a material alteration of the character of the mark." *Id*. But the Board noted that *Florasynth* appeared to provide an exception:

> However, an amendment adding matter to an applicant's mark sought to be registered has been permitted where the applicant owned a registration of the matter sought to be added for the same goods as those listed in the application, notwithstanding the fact that the amendment constituted

what normally would be considered a material alteration of the mark in the application.

*Id*. (citing *Florasynth*, 122 USPQ 284).

Its reference to *Florasynth*, however, was dicta, as the Board's decision in *Nationwide* was dictated by its finding that "the goods in this registration are distinctly different from those for which registration is now sought, and applicant does not, in fact, contend otherwise." *Id*. at 1886, *cited in In re Hacot-Columbier*, 105 F.3d 616, 41 USPQ2d 1523, 1526-27 (Fed. Cir. 1997) (finding applicant's proposed addition of house mark would be a material alteration of applied-for mark because it was not yet registered and identified different goods). On that basis, the Board affirmed the refusal to register SNAP RUST BUSTER.

*Nationwide's* dicta in 1988 characterized *Florasynth* as creating an exception to the general rule against material alteration of an applied-for mark: that is, that an applicant could add a registered mark to an applied-for mark for the same goods or services, even if that addition would otherwise be considered a material alteration of the original.

But later evolution in the law bears out the approach in the 1992 *LaBatt* decision: that is, an applicant's ownership of a registered mark for the same goods or services **may** be considered as a factor in determining whether adding that mark to an applied-for mark constitutes a material alteration. Specifically, between *Nationwide* and *LaBatt*, Trademark Rule 2.72 was amended in 1989 to provide, in pertinent part:

(a) Amendments may not be made to the description or drawing of the mark if the character of the mark is materially altered. The determination of whether a proposed amendment materially alters the character of the

mark will be made by comparing the proposed amendment with the description or drawing of the mark as originally filed.[39]

This provision was added "to codify present practice, the purpose of which is to prevent an applicant from repeatedly amending the mark sought to be registered until it bears little resemblance to the mark as originally filed."[40] The "material alteration" rule is the standard for evaluating proposed amendments to all marks at all relevant stages of processing, during examination of the application and after registration. *In re Umax Data System Inc.*, 40 USPQ2d 1539, 1540 (Comm'r, 1996). *See generally* 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 19:133, 19:58.50 (5th ed. Sept. 2020 update). Thus, "an amendment to the mark, whether offered before or after registration, will be allowed only if the amendment does not alter materially the character of the mark." *Hilson Research Inc. v. Society for Human Resource Mgmt.*, 27 USPQ2d 1423, 1439 n.24 (TTAB 1993).

In 1999, Trademark Rule 2.72 was amended again, ten years after the previous amendment, to state this requirement in the affirmative:

(a) In an application based on use in commerce under section 1(a) of the Act, the applicant may amend the description or drawing of the mark only if:

(1) The specimens originally filed, or substitute specimens filed under § 2.59(a), support the proposed amendment; and

(2) The proposed amendment does not materially alter the mark. The Office will determine whether a proposed amendment materially alters a mark by

---

[39] Amendments to Patent and Trademark Rules to Implement Trademark Law Revision Act; Miscellaneous Trademark Rule Amendments, 54 FR 37562-01, Sept. 11, 1989, effective Nov. 16, 1989.

[40] *Id.*

comparing the proposed amendment with the description or drawing of the mark filed with the original application.[41]

At the same time, Trademark Rule 2.52 was amended to provide that the "drawing depicts the mark sought to be registered."[42] 37 CFR § 2.52, *quoted in In re Thrifty, Inc.*, 274 F.3d 1349, 61 USPQ2d 1121, 1123 (Fed. Cir. 2001); *see In re Change Wind Corp.*, 123 USPQ2d 1453, 1459 n.6 (TTAB 2017) ("the drawing of the mark, not the words an applicant uses to describe it, controls what the mark is").

In 2000, reading Trademark Rules 2.52 and 2.72 together, the Board declared "under the new rules, any and all proposed amendments are subject to the material alteration standard, and no amendment is permissible if it materially alters the mark sought to be registered, i.e., the mark depicted on the drawing." *In re Who? Vision Sys., Inc.*, 57 USPQ2d 1211, 1217 (TTAB 2000), *quoted in In re Innovative Cos.*, 88 USPQ2d 1095, 1097 (TTAB 2008).

### C. Current Reading of the Law Regarding Material Alteration

Under Trademark Rules 2.52 and 2.72, as they now read, the key comparison is between the proposed amendment and the drawing of the mark in the original application. *See generally* Catherine Krebs & Radhika Raju, *Has the Rule Against Material Alteration of Trademark Drawings Been Materially Altered?* 90 TRADEMARK REP. 770, 774-77 (2000). The crucial question is whether the old and new forms of the mark create essentially the same commercial impression. *Visa*, 220 USPQ2d at 743-44; *In re Guitar Straps Online, LLC*, 103 USPQ2d 1745, 1747 (TTAB 2012).

---

[41] Federal Register 1999, 64 Fed. Reg. 48900 Trademark Law Treaty Implementation Act Changes, Sept. 8, 1999.

[42] *Id.* at 48902.

This is a question of fact, to be evaluated from the viewpoint of an ordinary consumer. "The commercial impression that a mark conveys must be viewed through the eyes of a consumer." *DuoProSS Meditech Corp. v. Inviro Medical Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012), *quoted in Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 113 USPQ2d 1365, 1367 (2015), *cited in Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports*, S.L.U., 797 F.3d 1363, 116 USPQ2d 1129, 1133 (Fed. Cir. 2015). These consumers, unfamiliar with registrations on the Principal Register, may see an applicant's addition of his previously registered matter as a significant change from the mark as originally filed. Indeed, an applicant may own scores of previously registered marks, any one of which could be appended to the root mark as originally filed. The mark as originally filed could thereby serve as a placeholder for later amendments bearing "little resemblance to the mark as originally filed."[43]

Consequently, we hold that previous registration of matter added in a proposed amendment is not an exception to the rule against material alteration; it is a factor to be considered in determining whether the alteration is material. The dicta in *Nationwide* suggesting otherwise has been superseded by the evolution of the applicable Trademark Rules and case law, with the result that the current state of the law is consistent with that taken in *LaBatt*. In this respect, an applicant's ownership of a previously registered mark is like other factors to be considered. *See In re Vienna Sausage Mfg. Co.*, 16 USPQ2d 2044, 2047 (TTAB 1990) ("The question of whether a new search is necessitated by the amendment is a factor to be considered

---

[43] *Id.*

but is not the determining element of whether or not to accept the amendment."); *LaBatt*, 26 USPQ2d at 1078 ("Whether republication would be required is only one consideration in the determination of whether a mark has been materially changed.").

#### D. Application of the Law Regarding Material Alteration to the Present Case

Applying these principles to this case, we agree with the Examining Attorney that Applicant's proposed amendment, adding **THE LEE GREENWOOD COLLECTION,** would materially alter his original applied-for mark, **GOD BLESS THE USA**. Material alteration issues arise most frequently when an applicant seeks to add new material to his proposed mark. *Pierce Foods*, 230 USPQ at 308 n.2. As *Pierce Foods* demonstrates, adding even one word—such as the house mark **PIERCE**—to the mark in the original application can present "a materially different mark." *Id.* at 308.

In this case, adding Applicant's "house mark," **THE LEE GREENWOOD COLLECTION,** would create an even greater difference in the sight and sound of the original proposed mark. The additional four words would appear prominently as the first part of Applicant's proposed mark, the part that "is most likely to be impressed upon the mind of a purchaser and remembered." *In re Aquitaine Wine USA, LLC*, 126 USPQ2d 1181, 1185 (TTAB 2018) (quoting *Presto Prods. Inc. v. Nice-Pak Prods., Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988)). And the additional seven syllables would create a noticeably different pronunciation.

Adding Applicant's house mark would, moreover, make a substantial difference in connotation and commercial impression. Even a minor change can make a substantial difference. *See In re Yale Sportswear Corp.*, 88 USPQ2d 1121, 1123 n.3 (TTAB 2008)

("UPPER 90 and UPPER 90° are significantly different in connotation…."); *In re Who? Vision*, 57 USPQ2d at 1218 ("TACTILESENSE and TACILESENSE have distinctly different commercial impressions."). In this case, adding **THE LEE GREENWOOD COLLECTION** to **GOD BLESS THE USA** would drastically alter the proposed mark's meaning and commercial impression, moving it from a platitudinous well-wishing to a singer's claimed signature song. And while this may be the desired effect, it does not "create the impression of being essentially the same mark." *Visa*, 220 USPQ at 743-44. It is a new mark, bearing little resemblance to the proposed mark for which Applicant originally applied.

Consequently, we find that Applicant's proposed amendment to his original applied-for mark constitutes a material alteration, and therefore is impermissible under Trademark Rule 2.72(a)(2).

## III. Conclusion

For the foregoing reasons, we find that the original applied-for mark, GOD BLESS THE USA, fails to function as a trademark, and that Applicant's proposed amendment is impermissible because it would materially alter the original proposed mark.

**Decision**: The refusal to register is affirmed as to both classes.